IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

LYNX SERVICES, L.L.C.,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; SAFELITE
GROUP, INC.; and SAFELITE
SOLUTIONS, L.L.C.

     Defendants.

Case No.: 25-cv-1251-JEH-RLH

**Public (Redacted) Version**

### STATE FARM'S MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant State Farm hereby moves to dismiss Counts I–IV in Lynx's Amended Complaint for failure to state a claim. As set forth in the attached supporting memorandum, Lynx fails to allege facts sufficient to state a claim that it owns any of the three purported trade secrets identified in the Amended Complaint, must less that they qualify as trade secrets and have been protected as such. Moreover, the contracts on which Lynx relies, namely an Out-tasking agreement between State Farm and Lynx and a separate contract between State Farm and its many glass-repair service providers, unambiguously contradict Lynx's conclusory allegations. Lynx's claims for misappropriation of trade secrets must be dismissed with prejudice, and its claims for unjust enrichment and breach of contract, which are merely trade-secret claims in disguise, must be dismissed with prejudice along with them.

**Table of Contents**

                                                                                                                    **Page**

Memorandum in Support of State Farm's Motion to Dismiss ........................................................... 1

I.  Procedural History ............................................................................................................ 2

II.  Alleged Facts .................................................................................................................... 3

    A.  The Agreement .......................................................................................................... 3

    B.  The State Farm O&A Program ................................................................................... 4

    C.  Lynx's Alleged Trade Secrets .................................................................................... 5

        1.  "Trade Secret A" ................................................................................................ 5

        2.  "Trade Secret B" ................................................................................................ 6

        3.  "Trade Secret C" ................................................................................................ 7

    D.  Lynx's Purported Protection of Trade Secrets A, B, and C .................................... 7

III.  Legal Standard ................................................................................................................. 8

IV.  Argument ......................................................................................................................... 9

    A.  Lynx's Claims for Trade Secret Misappropriation Must Be Dismissed. ............... 9

        1.  Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret A." ............................................................................................. 10

        2.  Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret B." ............................................................................................. 14

        3.  Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret C." ............................................................................................. 15

    B.  Lynx's Claim for Breach of Contract Must Be Dismissed. .................................. 18

    C.  Lynx's Claim for Unjust Enrichment Must Be Dismissed .................................... 19

V.  Conclusion ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
364 F. Supp. 3d 888 (N.D. Ill. 2019) ....................................................................20

*Amerikal Prods. Corp. v. Cave*,
No. 24 C 11292, 2025 WL 1883743 (N.D. Ill. July 8, 2025) ..................................10

*Archer Daniels Midland Co. v. Sinele*,
139 N.E.3d 1036 (Ill. App. Ct. 2019) ....................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8

*Bayer HealthCare LLC v. Aeropres Corp.*,
767 F. Supp. 3d 810 (N.D. Ill. 2025) ....................................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................8

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ..............................................................................9, 14

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ...............................................................................4, 9

*Cochran v. Illinois State Toll Highway Auth.*,
828 F.3d 597 (7th Cir. 2016) ....................................................................................8

*EEOC v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ....................................................................................8

*Fisher v. Ethicon, Inc.*,
No. 20-cv-1365, 2021 WL 5889522 (C.D. Ill. Dec. 13, 2021)...............................20

*G.R.P. Mech. Co. v. Greenlight Design Partners, LLC*,
No. 26-CV-1023, 2026 WL 1725842 (C.D. Ill. June 15, 2026) ...................... *passim*

*Illinois ex rel. Hammer v. Twin Rivers Ins.*,
No. 16 C 7371, 2017 WL 2880899 (N.D. Ill. July 5, 2017) ....................................11

*Inmar, Inc. v. Vargas*,
No. 18-cv-2306, 2018 WL 6716701 (N.D. Ill. Dec. 21, 2018)................................19

1:25-cv-01251-JEH-RLH    # 73    Filed: 08/03/26    Page 4 of 26

*Learning Curve Toys, Inc. v. Playwood Toys, Inc.*,
   342 F.3d 714 (7th Cir. 2003) ...................................................................................12

*Life Spine, Inc. v. Aegis Spine, Inc.*,
   8 F.4th 531 (7th Cir. 2021) .......................................................................................9

*NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*,
   163 F.4th 1091 (7th Cir. 2026) ................................................................................15

*Pope v. Alberto-Culver Co.*,
   694 N.E.2d 615 (Ill. App. Ct. 1998) .......................................................................12

*Sanchez v. Walmart Inc.*,
   733 F. Supp. 3d 653 (N.D. Ill. 2024) ......................................................................20

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ....................................................................................9

*Yash Venture Holdings, LLC v. Moca Fin. Inc.*,
   116 F.4th 651 (7th Cir. 2024) ..................................................................................18

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)...............................................................................................4, 8

**Statutes**

765 ILCS § 1065/8(a) ....................................................................................................19

18 U.S.C. § 1839(3) ...................................................................................................9, 11

18 U.S.C. § 1839(4) ......................................................................................................11

18 U.S.C. § 1839(5) .................................................................................................10, 11

**Memorandum in Support of State Farm's Motion to Dismiss**

State Farm hired Lynx almost thirty years ago to administer auto-glass claims filed by State Farm's policy holders, a role which required Lynx to maintain a directory of the many repair shops who participated in State Farm's glass program. In 2025, State Farm informed Lynx that it would be retaining Safelite to take over as its third-party administrator upon the expiration of Lynx's contract. Lynx did not take the breakup in stride. Just days before the planned cutover, Lynx filed this lawsuit, trying to block the transition. Its efforts failed. The Court denied Lynx's motion for temporary restraining order and its motion for preliminary injunction, finding, among other things, that Lynx failed to show it was likely to succeed on the merits.

More than a year later, Lynx continues to press these baseless claims. Lynx assigns multiple labels to its claims (trade-secret misappropriation, breach of contract, and unjust enrichment), but they are all cut from the same cloth. Lynx claims that it shared confidential information with State Farm during their contractual vendor relationship and that State Farm acted unlawfully by using that information after replacing Lynx with a new vendor.

Lynx labels this allegedly confidential information "Trade Secrets A, B, and C." Trade Secret A is a compilation of data from the glass company directory that State Farm hired Lynx to maintain—a directory of State Farm's selected and contracted service providers maintained for State Farm's benefit. Trade Secret B is a pair of data fields in that directory. ██████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████[1] Trade Secret C is a

---

[1]    As stated previously (*see* ECF 68, p.3), State Farm does not agree with all of Lynx's redactions from the public record, but to the extent this Motion quotes or discusses information that has been redacted in Lynx's pleading and exhibits, State Farm has redacted that information in this Motion.

1

"pricing strategy" in State Farm's contract with its glass-service providers that dictates how State Farm will pay them for repair jobs. Lynx was not a party to those contracts.

State Farm hired Lynx as a service provider, and the information identified above is all part of the service that Lynx was paid to provide. Lynx's claim that it owns any of this information—let alone protected it as trade secrets—is wholly implausible. And there are no factual allegations in Lynx's Amended Complaint sufficient to turn this implausible story into a plausible claim for relief. Indeed, the contracts on which Lynx relies in support of its claims (and attaches as exhibits to its pleading) refute most of Lynx's allegations. Lynx's story does not hold together. The issue is not one of proof, and there are no factual issues that must be resolved; the things Lynx claims to be trade secrets cannot be trade secrets. Therefore, all of Lynx's claims against State Farm must be dismissed with prejudice.

## I.    Procedural History

Lynx filed this action on June 27, 2025, along with motions for a TRO and preliminary injunction. Following a hearing at which Lynx presented additional evidence, the Court denied both motions. (*See* ECF "Minute Entry" dated June 30, 2025.) State Farm then moved to dismiss Lynx's complaint. (ECF 38.) Lynx did not amend its complaint in response, choosing instead to oppose State Farm's motion. (*See* ECF 45.) On October 14, 2025, the Court granted State Farm's motion as to Lynx's claim for breach of contract, stayed the case to allow the parties to comply with a mandatory dispute-resolution provision in that contract, and denied State Farm's motion challenging all other counts in Lynx's complaint without prejudice, without analysis, and with leave to renew it if and when the case resumed. (ECF 57.)

The case has now resumed, and Lynx filed an Amended Complaint. The amended pleading is an improvement over the original. Lynx dropped all allegations related to one of the purported trade secrets (referred to as a "Customized Offers" program in its original complaint

2

(ECF 2 ¶¶ 30–31)), which State Farm had challenged in its first motion to dismiss (ECF 38, at 14–15). And Lynx labeled its remaining claimed trade secrets, "Trade Secrets A, B, and C," which serves to address problems of identification also raised in that motion. But the amended pleading still falls short. There is no set of facts Lynx can allege to turn information owned by State Farm into trade secrets owned by Lynx.

## II.    Alleged Facts

Lynx claims to be a "solutions provider that helps businesses connect seamlessly with their customers." (Am. Compl. ¶ 17.[2]) As a third-party administrator, Lynx administered State Farm's glass claims for nearly thirty years before losing that work to a competitor, Defendant Safelite. (*Id.* ¶¶ 1–2.) All of Lynx's claims against State Farm arise out of or relate to a "Glass Claims Services Out-Tasking Agreement" (the "**Agreement**") with an effective date of July 1, 2017, and a termination date of July 1, 2025. (*Id.* ¶¶ 48, 52–53.)

### A.    The Agreement

In the Agreement, Lynx "agreed to administer State Farm glass claims for State Farm policy holders using its professional capabilities and physical assets and according to State Farm's" rules, processes, and requirements. (*Id.* ¶ 49; *see also* Agr. ¶ 2(a).[3]) State Farm "require[d] such service from LYNX to administer the STATE FARM National Offer and Acceptance Program" (the "**O&A Program**"). (Agr., p. 1.)

---

[2]    Lynx filed an unredacted copy of its Amended Complaint, along with all exhibits, under seal at ECF 66. It was presented as an attachment to Lynx's motion for leave to amend the complaint (ECF 65). Lynx later filed a redacted version of the Amended Complaint and exhibits at ECF 70.

[3]    Citations to "Agr." are to the Out-tasking agreement between Lynx and State Farm, which Lynx attached to its Amended Complaint as Exhibit A.

B.      The State Farm O&A Program

The terms of State Farm's O&A Program are set forth in a separate contract; by its own terms, it is an agreement between State Farm and each individual "Glass Company" (defined as "an entity that performs auto glass repair and/or replacement services for Customers under terms of this [O&A Program] Agreement") (*see* Ex. B-1 to Am. Compl., p. 1). Lynx is not a party to the O&A Program Agreement, but a copy of it was attached as "Attachment G" to the Agreement between Lynx and State Farm.[4] (Am. Compl. ¶ 51.)

Lynx attached multiple versions of State Farm's O&A Program Agreement to its Amended Complaint.[5] Exhibit B to the Amended Complaint is one version. (*See id.* ¶ 51 & Ex. B.) Exhibit B-1 to the Amended Complaint is "the most recently updated version" of the document with an effective date of December 15, 2023. (*See* Am. Compl. ¶ 51 & Ex. B-1.) Exhibit E to the Amended Complaint is the version of the O&A Program Agreement State Farm presented to its Glass Companies when it provided notice that Safelite would be taking over as its claims administrator. (Am. Compl. ¶¶ 64, 66.) Lynx alleges that the pricing terms across versions are identical. (Am. Compl. ¶ 66.) Because Exhibit B-1 is the most recently updated version from the time when Lynx served as State Farm's administrator, State Farm will cite that version throughout this Motion.[6]

---

[4]     Lynx characterizes the O&A Program Agreement as an agreement "that LYNX signed with auto glass service providers." (Am. Compl. ¶ 66.) Lynx's exhibits conclusively contradict this allegation. On its face, the agreement is "between the Glass Company … and State Farm" and became effective upon each Glass Company's "receipt of State Farm's acceptance notice by Electronic Communication." (Ex. B-1, p. 1.) There is no provision for signatures, and Lynx is not a party to those agreements.

[5]     Because Lynx brought claims for breach of the Agreement and cited (and attached) both the Agreement and multiple copies of the O&A Program Agreement, the Court may consider these documents for purposes of resolving a motion to dismiss under Rule 12(b)(6). *See Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012).

[6]     Ex B-1 can be found at pages 82–93 of ECF 66.

The O&A Program Agreement informed Glass Companies that Lynx "is the Program Administrator selected by State Farm to provide call center, invoice handling, remittance management, and other administrative services relative to and in accordance with the State Farm O&A Program." (Ex. B-1, p. 11.) To be included, each Glass Company had to "apply to the O&A Program through an internet application hosted by the Program Administrator [i.e., Lynx] or other method designated by State Farm." (*Id.* at 5.) Participants were informed that "State Farm will utilize a Glass Company Directory to enable Glass Company to represent its company profile and services offered to State Farm." (*Id.*)

The Glass Company Directory administered by Lynx was called "METRYX." (*See id.* at 11 (defining "METRYX" as "[a] Glass Company Director [*sic*] developed by LYNX Services that enables Glass Company to identify its service capacity, capabilities, industry certifications and training, and other pertinent information").[7] )

C.    **Lynx's Alleged Trade Secrets**

Lynx alleges that State Farm, in the process of hiring Safelite as its new glass-claims administrator, "disclosed substantial volumes of data containing proprietary LYNX Information and confidential data from reports that LYNX routinely provided State Farm during the term of the Agreement." (*Id.* ¶¶ 57–58.) Lynx identifies this information as Trade Secrets A, B, and C. Its allegations as to each are discussed below.

1.    **"Trade Secret A"**

What Lynx now calls "Trade Secret A" is "the compilation of profile information from auto glass service providers maintained in LYNX's METRYX® Industry Services Registry."

---

[7]    Lynx alleges that, somewhere in the O&A Program Agreement, "State Farm acknowledges LYNX's exclusive ownership of the METRYX Tool." (Am. Compl. ¶ 51.) The agreement contains no such acknowledgement.  In any event, Lynx does not allege that State Farm misappropriated the tool, itself.

5

(*Id.* ¶ 19.) It is hosted on LYNX's website and "provides auto glass service providers the opportunity to register and maintain their capabilities in a profile." (*Id.* ¶ 19.) The profile data is submitted by the auto-glass service providers (*id.* ¶ 22), each of which is required, pursuant to its O&A Program Agreement with State Farm, to make sure "its company profile in the METRYX system is complete" (*id.* ¶ 24 & Ex. B-1, p. 5). The "compilation of profile information" required from program participants includes the following: "company name, address, phone number, hours of operation, whether a mobile service is offered, the service area, the types of repairs offered, technician credentials, technician qualifications, relevant training, mobile capabilities, and related information." (Am. Compl. ¶ 25.)

Lynx claims this database provides two benefits. The first is an apparent benefit to glass shops: they could create a single profile that could be used for multiple insurers because "METRYX data that LYNX collected is compiled on behalf of all of LYNX's customers." (*Id.* ¶ 22.) The second purported benefit concerns "the specific profile data fields developed using METRYX application logic during the process of creating (or updating) the auto glass provider company's profile," which Lynx claims "are subsequently used to drive pricing decisions that have saved State Farm millions of dollars." (*Id.* ¶ 23.) Lynx does not allege which "specific profile data fields" (e.g., phone number, mobile capabilities) are the valuable ones.

### 2.    "Trade Secret B"

Lynx alleges "Trade Secret B" to be ████████████████████████

█████████████████████████████████████████████████████████

███████████████████████ (*Id.* ¶ 27.) ██████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████ (*Id.* ¶¶ 27–28.)

6

### 3.    "Trade Secret C"

Lynx alleges that "Trade Secret C" is a "pricing strategy" that Lynx developed to "change the way auto glass service providers were managed" and "make the entire industry more efficient and fair." (*Id.* ¶ 31.) Lynx characterizes this pricing strategy as a ███████████

████████████████████████████████████████████████

█████████████████████████████████████ (*Id.* ¶ 33.)

This "pricing strategy" appears in the O&A Program Agreement between State Farm and its auto glass service providers and dictates how State Farm pays Glass Companies. (*Id.* ¶ 66.) Lynx alleges that this pricing structure is preferrable to a previous model used over 20 years ago where insurance pricing was based purely on the location of the service centers, without regard for where the work was performed. (*Id.* ¶ 32.)

### D.    Lynx's Purported Protection of Trade Secrets A, B, and C

Lynx alleges that the information it labeled as Trade Secrets A, B, and C is not generally known or readily ascertainable by the public. (*Id.* ¶ 37.) Glass service providers do not have access to any profile other than their own and must use passwords to access their accounts. (*Id.* ¶ 38.) Lynx's terms and conditions state that Lynx will provide the service providers' information to insurance companies to assist with glass claims (that's what State Farm hired it to do) but that Lynx would otherwise keep the service providers' data confidential. (*Id.* ¶ 39.)

Lynx alleges that the Agreement required State Farm to "keep strictly confidential" any trade secrets or other confidential information learned during State Farm's performance of the Agreement. (*Id.* ¶ 50.) The Amended Complaint does not allege that Lynx ever identified any such trade secrets or confidential information to State Farm, and the boilerplate contract provision does not identify any specific trade secrets:

7

The parties expressly acknowledge that in the course of their performance hereunder, they may learn or have access to certain confidential, patent, copyright, business, trade secret, proprietary or other like information or products of the other party or of third parties (for example, the other party's vendors, suppliers or customers), including but not limited to: Personal Data (as defined in the Direct Damages for Security Breach section of this Agreement); and other data such as date of birth, phone numbers, email addresses, and hash digests of any identifying data … . Anything in this Agreement to the contrary notwithstanding, the parties expressly agree that they will keep strictly confidential any such Information. "STATE FARM Information" means Information of STATE FARM and its third parties. LYNX Information shall include information of LYNX, its affiliates and its third parties.

(Agr. ¶ 5(a).)

The Agreement also provides that State Farm owns all information Lynx collects or generates on its behalf:

As between STATE FARM and LYNX, STATE FARM retains all ownerships [*sic*] rights in any and all STATE FARM Information, including but not limited to Personal Data, that STATE FARM provides or transmits to LYNX or that LYNX acquires, collects or generates on behalf of STATE FARM.

(*Id.* ¶ 13(d).)

## III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead enough facts "which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.,* 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). A plaintiff must allege sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "'Naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss.  *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *G.R.P. Mech. Co. v. Greenlight Design Partners, LLC*, No.

8

26-CV-1023, 2026 WL 1725842, at *1 (C.D. Ill. June 15, 2026) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

Where an agreement is central to a claim and that agreement is attached to the complaint, the court may consider it when ruling on a motion to dismiss. *See Brownmark*, 682 F.3d at 690. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## IV.    Argument

Count I is for breach of the Out-tasking Agreement between State Farm and Lynx. Count II, for "Unjust Enrichment," claims that "State Farm received many benefits when it entered the Agreement" and that it "accepted and retained" those benefits to Lynx's detriment. (Am. Compl. ¶¶ 77–78.) Counts III and IV are for misappropriation of trade secrets under federal and Illinois law, respectively. The remaining counts (V–VII) are against Safelite, only.

### A.    Lynx's Claims for Trade Secret Misappropriation Must Be Dismissed.

Lynx claims that the "LYNX Information" (Trade Secrets A and B) and the "METRYX Pricing Strategy" (Trade Secret C) are trade secrets owned by Lynx (*id.* ¶¶ 90, 114) and misappropriated by State Farm (¶¶ 100, 124).

Under the federal Defend Trade Secrets Act ("DTSA"), "information qualifies as a 'trade secret' if (1) 'the owner thereof has taken reasonable measures to keep such information secret' and (2) 'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (citing 18 U.S.C. § 1839(3)). "Misappropriation" under the DTSA is "'(A) acquisition of a trade secret of another by a person

9

who knows or has reason to know that the trade secret was acquired by improper means' or

'(B) disclosure or use of a trade secret of another without express or implied consent' under

certain conditions." *Amerikal Prods. Corp. v. Cave*, No. 24 C 11292, 2025 WL 1883743, at *4

(N.D. Ill. July 8, 2025) (quoting 18 U.S.C. § 1839(5)). Slight differences in the definitions of

"trade secrets" and "misappropriation" under Illinois law are "immaterial." *Id.* Courts can

analyze claims brought under the DTSA and Illinois law together. *Id.*

Lynx does not allege that State Farm unlawfully acquired any trade secrets; rather, it

alleges that State Farm unlawfully disclosed Trade Secrets A, B, and C to Safelite and that State

Farm unlawfully continued to use these purported trade secrets after terminating its Agreement

with Lynx. (Am. Compl. ¶¶ 104, 127.) These conclusory allegations, contradicted by the relevant

agreements, fail "to present a story that holds together." *Cf. G.R.P. Mech. Co.*, 2026 WL

1725842, at *1.

### 1. Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret A."

"Trade Secret A" is a "compilation of profile information from auto glass service

providers maintained in [METRYX]." (Am. Compl. ¶ 19.) Lynx makes general allegations about

associated "proprietary systems" (¶ 3) and "application logic" (¶ 23), but it does not allege that

State Farm misappropriated any systems, logic, or software code. Rather, Lynx claims that State

Farm used the *data* compiled in METRYX and shared that data with its new administrator. (*Id.*

¶¶ 100–01, 124.) Lynx alleges that its METRYX platform is offered to multiple insurance and

fleet customers (¶ 20), but it does not allege that State Farm had access to profiles other than

those of State Farm's own service providers. Thus, Lynx claims that State Farm misappropriated

a limited compilation of data comprising the names, addresses, phone numbers, etc. of State

10

Farm's own service providers—a compilation of data that State Farm hired and paid Lynx to maintain.

Lynx's allegations fail at a definitional threshold because Lynx is not the "owner" of the data it claims is a trade secret. For information to qualify as a trade secret, "the owner thereof" must protect it as such, and for a party to be liable for misappropriation, it must acquire, use, or disclose a trade secret of "another." *See* 18 U.S.C. § 1839(3), (5). "Owner" is defined in the DTSA as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4).

Interpretation of an unambiguous contract provision "is a question of law that can be decided at the motion to dismiss stage." *Illinois ex rel. Hammer v. Twin Rivers Ins.*, No. 16 C 7371, 2017 WL 2880899, at *4 (N.D. Ill. July 5, 2017) (citation omitted). Here, the Agreement is unambiguous: as between State Farm and Lynx, State Farm retained "all ownership rights in any and all STATE FARM Information … that … LYNX acquires, collects or generates on behalf of STATE FARM." (Agr. ¶ 13(d).) Lynx specifically alleges that it compiles profile information "*on behalf of all of LYNX's customers*." (Am. Compl. ¶ 22 (emphasis added).) State Farm was one of those customers. Thus, the Amended Complaint unambiguously provides that Lynx compiled data for its customers (including State Farm), and the Agreement unambiguously provides that anything Lynx acquired, collected, or generated for State Farm belongs to State Farm. Lynx does not own this data, and it cannot be Lynx's trade secret.

Where, as here, the documents on which a plaintiff relies conclusively contradict an allegation, the Court should not credit those allegations. *See G.R.P. Mech. Co.*, 2026 WL 1725842, at *4 (granting motion to dismiss where plaintiff alleged that a handbook required confidentiality, but the handbook "makes perfectly clear" that it did not "create legally

11

enforceable obligations on the part of [plaintiff] … or its employees"). In any event, Lynx makes only conclusory allegations of ownership. Lynx does not specifically allege that any data Lynx compiled of repair shops in State Farm's O&A Program was not acquired or collected on State Farm's behalf. Nor could it. Lynx was State Farm's "Program Administrator." (Ex. B-1, p. 11.) METRYX was the Glass Company Directory that enabled each of those companies "to identify its service capacity, capabilities, industry certifications and training, and other pertinent information." (*Id.*) State Farm used METRYX to enable each Glass Company "to represent its company profile and services offered to State Farm." (*Id.* at 5.) Profile information was entered and updated by the Glass Companies. (Am. Compl. ¶ 22 & Ex. B-1, p. 5.)

Apart from the threshold issue of ownership, Lynx has failed to allege facts that support its conclusory allegation that METRYX is a "compilation of profile information from glass service providers goes well beyond what is publicly available" (*id.* ¶ 25), which provides an additional basis to dismiss any claim related to its alleged Trade Secret A. The data Lynx identifies as part of its compilation, namely, company name, contact information, hours of operation, services offered, etc. (*id.* ¶ 25) does not include anything that would not be publicly available. A repair shop's name, address, and phone number are no secret. In any event, the information contained in those profiles did not originate with Lynx; it was added by the service providers themselves (*see id.* ¶ 24), and Lynx does not allege that it was done so in secret. A party cannot protect "information generally known or understood within an industry even if not to the public at large" as a trade secret. *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (quoting *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 617 (Ill. App. Ct. 1998)). Information that can easily be obtained from directories and the Internet do not

12

qualify as trade secrets. *Archer Daniels Midland Co. v. Sinele*, 139 N.E.3d 1036, 1045 (Ill. App. Ct. 2019).

Additionally, even if Lynx owned a valuable secret to protect in the first place, Lynx fails to allege facts to support its conclusory allegation that it undertook "reasonable methods to maintain the secrecy of its trade secrets." (Am. Compl. ¶ 93.) Allegations about password protections, SOX compliance, and ISO certification (¶ 43) suggest nothing more than general data protection and a safeguard to prevent individual glass service providers from accessing the accounts of other providers. Indeed, a simple allegation of password protections fails to put a litigant or the court "on notice of what information is a trade secret, and what information merely requires a password for access (which, in 2026, is practically everything)." *G.R.P Mech. Co.*, 2026 WL 1725842, at *4.

Nor does Lynx allege that it ever provided notice to State Farm that the data it maintained for State Farm was a Lynx trade secret, which undercuts the plausibility of Lynx's conclusory claim that it took reasonable measures to keep any specific information a secret. The best Lynx can do is lean on the Agreement's boilerplate confidentiality clause, which lists "trade secrets" among other categories of information a party "may learn or have access to" during the course of their multi-year contractual relationship. (Am. Compl. ¶ 50.) As the Court noted in denying Lynx's motion for preliminary injunction, the fact that something is boilerplate, "[d]oesn't mean it's not enforceable. But the issue here is that none of those provisions define what the trade secrets or the confidential information are." (ECF 23, Prelim. Inj. Hr'g Tr. 153:7–12 (June 30, 2025) ("PI Tr.").) In the year that has transpired since the Court made that finding, Lynx has come up with nothing further it can allege to show that it identified anything as a trade secret to State Farm prior to filing this suit.

Ultimately, there are no facts alleged that support the conclusory allegation that State Farm "knew, or had reason to know, that LYNX intended and expected that the secrecy of its trade secrets would be maintained and strictly observed." (Am. Compl. ¶ 99.) A party cannot be expected to keep a secret if no one tells them it's a secret. *See, e.g.*, *G.R.P. Mech. Co.*, 2026 WL 1725842, at \*4 (holding that plaintiff "fails to allege any sufficient measures taken to protect the relevant information and put the Defendants on notice that [plaintiff] possessed trade secrets"). Lynx has failed to allege facts sufficient to support the plausible existence of Trade Secret A, and all claims related to State Farm's use of data from its own Glass Company Directory or disclosure of that data to the new vendor State Farm hired to maintain that data must be dismissed.

### 2. Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret B."

"Trade Secret B" is part of Lynx's alleged "Trade Secret A." Lynx fails to allege facts sufficient to state a claim that the two data fields it claims as "Trade Secret B" are, in fact, trade secrets. These data fields are ███████████████████████████████████████ ██████████████████████████████████████ (Am. Compl. ¶ 27.) ███ ███████████████████████████████. (*Id.* ¶ 28.)

Again, the contracts Lynx attached to the Amended Complaint show conclusively that the information in these data fields does not belong to Lynx. The O&A Program Agreements provide that ████████████████████████████████████████ ██████████████████████████████ (Ex. B-1, p.3 (emphasis added).) And ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ (*Id.* at p. 4, §III(A) (emphasis added).) ████████████ ████████████████████████████████████████████

14

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ *See Bogie*, 705 F.3d at 609.

Furthermore, as with the rest of the alleged compilation of which "Trade Secret B" is a part, Lynx alleges no facts to show that it ever informed State Farm that this information must be treated as a trade secret. Indeed, such a claim is implausible, as Lynx seems to allege that State Farm is not permitted to ████████████████████████████████

████████████████████████████████████████████████████████

███████████ Lynx has thus failed to plausibly allege the existence of a "Trade Secret B."

### 3. Lynx Fails to Allege Facts that Plausibly Suggest the Existence of "Trade Secret C."

Lynx claims Trade Secret C is a "specific pricing strategy" that Lynx developed and launched in August of 2005. (Am. Compl. ¶¶ 31–32.) This ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ (*Id.* ¶ 33.)

Alleging that it came up with this strategy or that a different pricing structure predominated 20 years ago is not sufficient to turn a pricing term into a valuable trade secret. Even if this could be considered a new and valuable innovation at some point in time, "something being 'new and valuable' does not itself render it a trade secret." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1099 (7th Cir. 2026) (citation omitted). The purported strategy is remarkably simple: ████████████████████████

████████████████████████████████████████████████████████

15

██ Lynx alleges no facts that plausibly suggest this simple idea is a valuable and little-known innovation kept under lock and key. Indeed, Lynx alleges it is used broadly, that it "makes the entire industry more efficient and fair." (*Id.* ¶ 31.)

Moreover, the O&A Program Agreement between State Farm and each of its Glass Companies again contradicts Lynx's conclusory allegations. These agreements state: ████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ (Ex. B-1, p. 4, § III(B).) ██

████████████████████████████████████████████████

██████████████████████ (*See* Am. Compl. ¶ 33.)

Lynx was aware that the term was part of the O&A Program Agreement; a copy of it was appended as "Attachment G" to the Out-tasking Agreement between Lynx and State Farm. (*Id.* ¶ 51.) Lynx does not allege any facts to plausibly suggest that an agreement between State Farm and its many service providers—an agreement to which Lynx is not a party—contains a secret pricing strategy owned by Lynx and protected by Lynx as a trade secret. Indeed, the Agreement even provides that State Farm would indemnify Lynx against claims brought by third parties "arising out of or related to the administration, Business Rules, guidelines, existence and operation of, the O&A Program or minimum O&A pricing" or claims with allegations of noncompliance concerning "any aspect of the O&A Program designed or mandated by STATE FARM." (Agr. ¶ 16.)

The Agreement simply does not support a plausible claim that the terms of the O&A Program belong to Lynx, much less that they could be considered a trade secret owned by Lynx. As the Court noted in denying Lynx's motion for preliminary injunction: "The pricing

16

information is right there plain as day, and that – if that's anybody's trade secret, I would think it would be State Farm's, but it's not a trade secret. It's in their contract." (PI Tr. 149:20–25.)

Indeed, Lynx does not allege that it took reasonable measures to keep this "pricing strategy" a secret. Paragraphs 31–34, purporting to identify Trade Secret C, contains no allegations about protecting this information at all. And there is no allegation anywhere in the Amended Complaint that Lynx advised State Farm not to disclose its pricing terms to the Glass Companies (a request which would be impossible in any event) or that Lynx ever told the Glass Companies that the terms by which State Farm paid them were a Lynx trade secret. Lynx alleges only that it "considers the METRIX Pricing Strategy described as Trade Secret C above to be confidential information and safeguards it similarly to the LYNX Information." (Am. Compl. ¶ 36.) That is insufficient. Information and products are not confidential merely because the claimed owner "subjectively believes them to be confidential." *G.R.P. Mech. Co.*, 2026 WL 1725842, at *3.

Lynx has fallen well short of any plausible allegation that the "METRYX Pricing Strategy" was ever a trade secret, much less that Lynx kept it so. And Lynx has not alleged any facts that plausibly suggest that State Farm engaged in acts of misappropriation by continuing to use the same pricing terms after retaining a new claims administrator. All claims dependent on the existence of "Trade Secret C" must be dismissed.

\*      \*      \*

Thus, Lynx's alleged trade secrets consist of (a) basic profile data about State Farm's Glass Companies stored in a Glass Company Directory State Farm hired Lynx to maintain for State Farm, (b) ██████████████████████████████████████ ██████████████████████████████████, and (c) ████████████████████

17

████████████████████████████████████████████████████████

████ Lynx does not allege facts that suggest a plausible claim to ownership of this data, that it qualifies as trade secrets, or that it was misappropriated by State Farm. Counts III and IV should therefore be dismissed.

### B.     Lynx's Claim for Breach of Contract Must Be Dismissed.

A plaintiff claiming breach of contract under Illinois law must allege "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Bayer HealthCare LLC v. Aeropres Corp.*, 767 F. Supp. 3d 810, 815–16 (N.D. Ill. 2025) (quoting *Yash Venture Holdings, LLC v. Moca Fin. Inc.*, 116 F.4th 651, 657 (7th Cir. 2024)). The Court previously dismissed this count because Lynx failed to allege that it performed all required conditions (Lynx had not complied with a mandatory dispute-resolution provision in the contract it alleged was breached). (ECF 57, at 6.) The parties have since engaged (unsuccessfully) in the required procedures, and Lynx now alleges the missing element as part of its claim. (*See* Am. Compl. ¶ 70.)

But Lynx's claim for breach of contract remains deficient for another reason: the alleged breach is identical to Lynx's claim for misappropriation of trade secrets. Specifically, Lynx alleges that the Agreement required State Farm to "'keep strictly confidential' Lynx's confidential information and trade secrets, which includes the LYNX Information [i.e., Trade Secrets A and B] and the METRYX Pricing Strategy [Trade Secret C]." (*Id.* ¶ 71.) Lynx alleges that it supplied information to State Farm throughout the course of their long contractual relationship and that State Farm shared "substantial volumes of data containing proprietary information" with Safelite. (*Id.* ¶¶ 71–72.)

The only alleged breach of confidentiality is the disclosure of alleged Trade Secrets A, B, and C to Safelite. Thus, Lynx fails to state a plausible claim for breach of contract for the same

18

reasons it fails to state plausible claims for misappropriation. Profile data from State Farm's

Glass Company Directory, ████████████████████████████████████████

████████████████████████████████████████████████████████ is

information that belongs to State Farm pursuant to the Agreement. (Agr. ¶ 13(d).) Lynx does not

allege that it ever identified any of this information to State Farm as confidential "LYNX

Information" or that the Agreement identifies it as such. And Lynx alleges no facts that would

plausibly suggest that any of the identified information is anything other than information that

Lynx "acquire[d], collect[ed], or generate[d] on behalf of STATE FARM." Lynx specifically

alleges that "METRYX data that LYNX collected is compiled on behalf of all of LYNX's

customers." (Am. Compl. ¶ 22.) Count I should be dismissed.

### C.    Lynx's Claim for Unjust Enrichment Must Be Dismissed

Count II is for "unjust enrichment." The claim is premised on State Farm's alleged

retention of a benefit conferred by Lynx. (Am. Compl. ¶ 77.) The alleged benefit is, once again,

"LYNX's confidential information and trade secrets." (*Id.* ¶ 78.) Lynx alleges that "[p]ursuant to

the Agreement, State Farm agreed to use LYNX's confidential information for limited purposes"

and not to share it. (*Id.* ¶ 79.) Lynx alleges that State Farm nonetheless shared "proprietary

information from the METRYX registry" with Safelite. (*Id.* ¶ 81.)

Thus, Lynx alleges that State Farm was unjustly enriched by retaining and using Lynx's

confidential information. Such claims are expressly preempted by the Illinois Trade Secrets Act,

which is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws

of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS

§ 1065/8(a). Illinois courts have repeatedly held that tort claims predicated on the misuse of

confidential or secret information are preempted. *See Inmar, Inc. v. Vargas*, No. 18-cv-2306,

2018 WL 6716701, at *10, *12 (N.D. Ill. Dec. 21, 2018) (compiling cases and dismissing unjust-

enrichment claim because it is "dependent on trade secrets"). Lynx's efforts to allege a category of "confidential information" separate from "trade secrets" by repeated use of the phrase "confidential information and trade secrets" (*see, e.g.,* Am. Compl. ¶ 3) is not sufficient to escape preemption. "State law causes of action that are based upon the misappropriation of confidential business information are preempted by ITSA … even when the information does not rise to the level of a trade secret." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. 2019).

Apart from that, unjust enrichment is generally not recognized as an independent cause of action under Illinois law. *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 673 (N.D. Ill. 2024). To the extent Lynx claims the benefit that unjustly enriched State Farm is the same as the benefit bargained for in the contract, that claim rises and falls with Lynx's claim for breach of contract. *See Fisher v. Ethicon, Inc.*, No. 20-cv-1365, 2021 WL 5889522, at *6 (C.D. Ill. Dec. 13, 2021).

Lynx's claim for unjust enrichment is merely an alternate label for Lynx's claims for misappropriation of trade secrets and breach of contract. Count II must be dismissed.

## V.    Conclusion

Lynx was hired by State Farm to administer its auto glass program. Lynx did so for nearly 30 years and was recently replaced. Now Lynx seeks to prevent State Farm from using (a) basic profile data about State Farm's Glass Companies that was stored in the Glass Company Directory State Farm hired Lynx to maintain, (b) ███████████████████████████████ ████████████████████████████████████████████████ and (c) ██ ████████████████████████████████████████ Lynx fails to allege facts sufficient to plausibly suggest any of this information could possibly belong to Lynx, let alone be protected as a Lynx trade secret. It has therefore failed to state any claim for relief that is plausible on its face. Counts I–IV should be dismissed with prejudice.

20

Lynx has had multiple opportunities to put its best foot forward after filing this case over a year ago, and there is no basis to presume Lynx can cure the deficiencies identified in this motion with another amendment. Lynx was hired to administer claims for State Farm. After being replaced by another administrator, Lynx is claiming that State Farm cannot use the information State Farm hired Lynx to maintain for State Farm. The claims cannot be pursued in good faith. Lynx's Amended Complaint should be dismissed with prejudice.

Dated: August 3, 2026

Respectfully submitted,

*/s/Jeffrey A. Wakolbinger*

Jeffrey A. Wakolbinger
jeff.wakolbinger@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
161 N. Clark St., Suite 4300
Chicago, IL 60601
T: (312) 602-5061

Frank W. Ierulli
fierulli@heylroyster.com
John P. Heil, Jr.
jheil@heylroyster.com
Samuel J. Perkins
sperkins@heylroyster.com
HEYL ROYSTER
300 Hamilton Blvd., Suite 200
Peoria, IL 61602
T: (309) 676-0400

21

**<u>Certification of Word Count Pursuant to LR 7.1(B)(4)(b)</u>**

I hereby certify this Memorandum in Support of State Farm's Motion to Dismiss exceeds 15 pages but consists of 6,775 words as computed using the word count in Microsoft Word, which is less than the 7,000-word limit set forth in Local Rule 7.1(B)(4)(b).

/s/Jeffrey A. Wakolbinger

22